848 So.2d 733 (2003)
The BOARD OF DIRECTORS OF THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF NEW ORLEANS, Louisiana, Inc.
v.
All TAXPAYERS, PROPERTY OWNERS, CITIZENS OF THE CITY OF NEW ORLEANS and Non-Residents Owning Property or Subject to Taxation Therein, and All Other Persons, et al.
No. 2003-CA-0827.
Court of Appeal of Louisiana, Fourth Circuit.
May 29, 2003.
*735 Albert A. Thibodeaux, Chief Deputy City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, And Wayne J. Neveu, Harold B. Judell, Meredith L. Hathorn, Foley & Judell, L.L.P., New Orleans, LA, David E. Henderson, Foley & Judell, L.L.P., Baton Rouge, LA, for Plaintiff/Appellee.
Cameron C. Gamble, Cameron C. Gamble, A PLC, and Camille J. Strachan, and Michael A. Duplantier, New Orleans, LA, for Defendants/Appellants.
(Court Composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS, JR., and Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
The defendants/appellants, as representatives of all taxpayers, property owners, citizens of the city of New Orleans and non-residents owning property or subject to taxation in New Orleans, and all other persons in or affected in any way by the issuance of not more than $29 million in industrial revenue bonds of the Industrial Development Board of the City of New Orleans, Louisiana, Inc. (hereinafter collectively "appellants"), have appealed the judgment of the trial court granting the plaintiff's motion for validation of bonds. This appeal comes before the court on an expedited basis pursuant to La. R.S. 13:5128.
The bond issue arises out of the proposed sale of $29 million of industrial revenue bonds (known as the LGD Rental I, L.L.C. Project) to be financed by the acquisition, construction, and installation of off-site multi-family mixed-income residential housing facilities on the site of the former St. Thomas Housing Project. The bonds will be secured by the "improvements" to be constructed on land that is owned by the Housing Authority of New Orleans; the land will be leased to a private developer for a term of 99 years. While the bonds are in effect, no ad valorem taxes will be collected on the project; payments in lieu of taxes of $1.00 per unit per year for the 122 affordable units and $100.00 per unit per year for the 174 market rate units until the bonds are retired, will be collected. The resolution authorizing these bonds and the extension of the repayment of the bonds from 30 to 40 years was approved by the plaintiff, the Board of Directors of the Industrial Development Board of the City of New Orleans, Louisiana, Inc. (hereinafter "IDB") on 18 December 2002; the State Bond Commission, approved the change on 19 December 2002.
*736 The following facts were established in the trial court. The IDB, a political subdivision and a nonprofit corporation as well as "governmental unit" pursuant to La. R.S. 13:5121(2), was created by the City Council for the city of New Orleans on 4 January 1973. On 17 October 2000, the IDB adopted the Preliminary Authorization Resolution, which approved housing facilities and the acquisition of off-site multi-family residential housing facilities to be located in the city of New Orleans (hereinafter "the Project") and granted preliminary authorization for the issuance of the bonds to provide a portion of the moneys necessary to finance the acquisition, construction, and installation of the Project.
On 16 August 2001, the State Bond Commission granted preliminary approval for the issuance of the bonds, and on 22 July 2002, adopted a resolution increasing preliminary authorization for the IDB to issue the bonds in an aggregate principal amount not exceeding $29 million.
The Project was the subject of a public hearing on 19 November 2002. On 18 December 2002, the IDB adopted a resolution, which confirmed all prior resolutions and supplemented these resolutions by increasing the maturity of the bonds from 30 years to 40 years. The draft resolution of the IDB was mailed to the State Bond Commission on 9 December 2002 and was received and filed with the commission on 10 December 2002; it was given final approval on 19 December 2002.
The IDB filed suit to validate the bonds pursuant to La. R.S. 13:5121, et seq. On 3 March 2003, the appellants filed various discovery requests; thereafter they filed an answer, a reconventional demand, and a third-party demand against the State Bond Commission. After the IDB filed what the appellants deemed to be incomplete discovery responses, the appellants filed a motion to compel and subpoena duces tecum; the motion was denied and the subpoena was quashed by the trial court. The trial court also denied the appellants' request to continue the hearing on the motion to validate the bonds until the State Bond Commission could answer. The trial court then severed the third-party demand and proceeded to trial on the main and reconventional demands.
The appellants filed an application for a supervisory writ from the decisions relating to discovery. On 4 April 2003, this court issued an opinion that denied the appellants relief. The trial court rendered judgment and reasons therefor in favor of the IDB on 15 April 2003 stating:
This Court finds that the Industrial Development Board acted properly and within the course and scope in issuing the bonds for the LGD Rental I, L.L.C. Project. This Court therefore finds no evidence of substantial defects, material errors and omissions in the incidents of the bond issue. [Footnote omitted.]
The appellants have taken an expedited appeal from that decision.
On 20 May 2003, the appellants filed a motion to remand this case on the grounds of newly discovered evidence, for the purpose of reopening the trial, and allowing the discovery and introduction of additional evidence in the trial court. This "newly discovered evidence" consists of documents which purportedly demonstrate that one of the directors of the IDB entered into a contract of value with the developer/bond beneficiary, thereby receiving "something of value," which is prohibited by La. R.S. 42:1111, et seq. This director voted at the 18 December meeting of the IDB on a matter affecting the subject bonds. Eight of the fourteen members of the IDB were present at the meeting (a minimum quorum) and the resolution passed on an 8-0 vote.
*737 While we admit that the evidence submitted by the appellants is potentially disturbing, this court is a court of record, which must limit its review to the evidence in the record before it. Ventura v. Rubio, XXXX-XXXX, pp. 3-4 (La.App. 4 Cir. 3/16/01), 785 So.2d 880, 885. Pursuant to La. C.C.P. art. 2164, an appellate court must render a decision upon the record on appeal. The record on this appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings, unless otherwise designated. La. C.C.P. arts. 2127 and 2128. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Augustus v. St. Mary Parish School Board, 95-2498, p. 16 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1156. The appellate briefs or motions of parties and attachments thereto are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred to therein, or in exhibits attached thereto, if those facts are not in the record on appeal. Id. The appellants must seek their remedy, if any, before the trial court. See La. C.C.P. art.2001, et seq.
The appellants have assigned three errors for consideration. First, they argue that the trial court erred in denying their motion to compel discovery, responses to the subpoena duces tecum, and to adjourn to allow discovery. Second, the appellants argue that the bonds should not have been validated because of "substantial defects, material errors and omissions" contained in the bond issue pursuant to La. R.S. 13:5130. Finally, they argue that the trial court erred by severing the third-party demand against the State Bond Commission from the validation proceeding.
On the first assignment of error, the appellants argue that they could not adequately defend against the bond validation without the records and evidence requested in their discovery. They claim that complete answers would have proved their defenses and reconventional demands, thereby defeating the motion for judgment. The appellants argue that, as a result, they were denied procedural due process.
In response, the IDB states it was served with the subpoena duces tecum on 1 April 2003, less than 48 hours before the hearing date of 3 April 2003, which was both unreasonable and oppressive. In addition to the time limitation, the subpoena duces tecum sought numerous documents as outlined in 27 separate requests, most of which were part of the public record and not in IDB's possession. It contends that the trial court acted within its discretion and did not commit reversible error.
The record shows that the trial court denied the appellants' request for more complete answers, finding that the responses to the request for admissions by the IDB were sufficient. As to the return on the subpoena duces tecum, the trial court remarked that from its review of the documents that were produced, counsel for the appellants were present at many of the public hearings and that it "appeared that there was a defense that was being prepared many months ago." The trial court reminded counsel that many of the documents sought by appellants were available to them within five days by a proper request pursuant to the Public Records Act, La. R.S. 44:1, et seq., and refused to postpone the hearing for further discovery.
No constitutional right to discovery exists; discovery is a statutorily created privilege. Council of the City of New Orleans v. All Taxpayers, Property Owners, XXXX-XXXX (La.App. 4 Cir. 2/24/03), 841 So.2d 72. While the courts should construe the discovery statutes broadly and liberally, as a general rule, the trial court's *738 discretion in discovery matters is vast. See Succession of Manheim, 98-2051 (La. App. 4 Cir. 4/21/99), 734 So.2d 119, 125, writ denied, 99-1861 (La.10/8/99), 751 So.2d 218. Absent an abuse of discretion, an appeal court should not reverse a trial court's discovery ruling. Id.; see also Laburre v. East Jefferson Gen. Hosp., 555 So.2d 1381, 1385 (La.1990).
After reviewing the record on appeal, we do not find an abuse of discretion by the trial court. Counsel for the appellants had ample time to obtain most, if not all, of the requested documents through a timely public records request. In addition, the court found that the requests for admissions had been satisfactorily answered, and no abuse of discretion has been shown. Accordingly, we reject this assignment of error.
In their second assignment of error, the appellants contend that the violation of the rules and regulations of the State Bond Commission regarding the filing and approval of the bond resolution constitutes "substantial defects, material errors and omissions" pursuant to La. R.S. 13:5130. In particular, they argue the bond application filed on 18 December 2002, and approved by the State Bond Commission the next day violated the commission's rules and regulations that require an application be submitted no later than twenty working days prior to the State Bond Commission meeting or the application will not be considered, absent an extraordinary case of emergency.[1]
In response, the IDB states that the State Bond Commission adopted a resolution on 16 August 2001, granting preliminary approval to the issuance of the bonds, that the commission on 22 July 2002, through proper resolution, increased the amount and that the 19 December 2002 resolution gave final approval to the issuance, sale, and delivery of the bonds. The IDB contends that the 19 December 2002 approval merely confirms its prior resolutions and does not violate commission rules. In addition, the IDB argues that filing rules are procedural in nature, can be waived by the commission, and do not rise to the level of substantial defects, material errors or material omissions. Finally, the IDB points out that the commission refused to rehear this issue on 20 February 2003, based on a Letter of Advice issued by the Attorney General on 9 January 2003.
La. R.S. 13:5130 provides as follows:
No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded. [Emphasis added.]
The appellants are relying on La. Admin. Code 71:III § 103(C), which provides in pertinent part:
C. Applications ... must be filed with the commission at least 20 working days prior to the commission meeting at which the application will be considered. However, the secretary of the commission may approve a later filing for an emergency or an extraordinary situation.... Unless otherwise provided by these rules, all information relating to an application shall be submitted to the *739 commission no later than 10 working days prior to the commission meeting at which the application will be considered; otherwise the application will not be docketed for consideration.
We have carefully reviewed the record and note that the proposed resolution that changed the term of the bonds from thirty to forty years was filed with the commission on 10 December 2002, eight working days prior to the commission meeting, although it was not formally adopted by the IDB until 18 December 2002. We also note that the resolution at issue was not a new application, but was a resolution to amend prior resolutions previously approved by the commission.
As noted in Attorney General opinion number 79-1384, as confirmed by Attorney General opinion number 02-456, procedural rules "are routinely suspended by public bodies under applicable rules." All prior documentation relating to the application had been previously filed by the IDB and approved by the commission. We have reviewed the Louisiana Administrative Code rules applicable to the commission, as well as the rules of the commission set forth in Louisiana Register.[2] Neither Procedural Rule 2, relied upon by the IDB, nor La. Admin. Code 71:III § 103(C), cited by the appellants, addresses the filing of amendments to previously approved applications. Therefore, we do not find that the filing of the amended resolution by the IDB on 10 December 2002 constitutes a substantial defect, material error or omission, as required by the statute.
The final assignment of error concerns the third-party demand the appellants filed against the State Bond Commission. Before the hearing, the trial court severed the third-party demand. It thereafter rendered judgment only on the plaintiff's motion for judgment. The appellants contend that the third-party demand should have been tried simultaneously with the main demand because the failure to do so deprived them of the opportunity to prove a material defect of the bonds in question.
In response to this assignment, the IDB states that the State Bond Commission is not an indispensable party to these proceedings and commission approval of the bonds can be proven without the commission's involvement as a party. The IDB further asserts that because the records of the commission are public, the appellants' ability to prove their case was not thwarted by the commission's absence.
We disagree with the appellants' position on this issue. In attempting to defend the bond validation suit, the appellants were not prevented from calling representatives of the State Bond Commission as witnesses or subpoenaing records. In addition, as pointed out by the IDB, all records of the commission could have been obtained through timely public records requests and introduced into evidence during the trial.
The jurisprudence describes an "indispensable party" as one whose interest in the subject matter of the litigation is so interrelated that a complete adjudication of the controversy cannot be made unless the party is joined in the action. Smith v. State, 620 So.2d 1172, 1178 (La. App. 1 Cir.1992); Hatfield v. Bush, 540 *740 So.2d 1178, 1180 (La.App. 1 Cir.1989), writ denied, 576 So.2d 49 (La.1991).
Since mid-1995, the Louisiana Code of Civil Procedure no longer refers to parties as "necessary" or "indispensable." Rather, the code mandates an analysis of the interests of the joined and non-joined parties with respect to the action to determine whether the action may proceed. La. C.C.P. art. 641 mandates, in pertinent part: "a person shall be joined as a party in the action when either: (1) in his absence complete relief cannot be accorded among those already parties." Pursuant to La. C.C.P. art. 642, "[i]f a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed." Failure to join a party may be noticed by the trial or appellate court on its own motion. La. C.C.P. art. 645.
In the instant matter, the commission's presence is not necessary for complete relief because the issue of whether the commission followed its procedures is a matter of ordinary proof that the appellants could have attacked collaterally in this case in the trial court. The commission's presence as a party was not needed to call commission witnesses or introduce commission documents to demonstrate that a material defect in the bonds existed.
We also note that the appellants have filed a separate suit against the State Bond Commission, which is currently pending in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, number C 504986, wherein they challenge the validity of the commission's actions and seek to set aside the actions taken by the commission approving the bonds. The appellants could have obtained relevant discovery from that litigation and introduced it in the hearing below to prove its case. In any event, no showing of a substantial defect, material error or omission has been made here and, therefore, this assignment of error is without merit.
Based on the foregoing, we affirm the judgment of the trial court and deny the appellants' motion to remand. All costs of this appeal are assessed against the appellants.
AFFIRMED; MOTION TO REMAND DENIED.
NOTES
[1] The appellants also argue that the application to the State Bond Commission was deficient because it did not contain five years of financial information as required by Rule 127 of the Louisiana Administrative Code. However, as pointed out by the IDB, LGD Rental I, L.L.C. has no prior operating history and, therefore, this requirement was waived by the commission. (Logically one cannot produce that which one does not have.)
[2] Procedural Rule 2 found in the Louisiana Register requires that applications be filed with the commission at least eight working days in advance of a commission meeting, except in cases of absolute emergencies or in cases where staff permission for later filing of routine matters is granted. See LR 2:343, § II(2) (November 1976), amended LR 4:392 (October 1979).